STATE OF CONNECTICUT  :     3:17mj1871 - JGM

                                                       :     ss: New Haven, Connecticut

COUNTY OF NEW HAVEN    :     November 29, 2017

FILED
2017 DEC 4 PM 1 51
U.S. DISTRICT COURT
NEW HAVEN, CT.

## AFFIDAVIT OF VICTORIA EDWARDS

I, Victoria D. Edwards, being duly sworn, state as follows:

1. I, am a Special Agent for the Drug Enforcement Administration ("DEA"), New England Field Division, and have been so employed since 2010. I am currently assigned as a Special Agent for the DEA's, New Haven District Office-Tactical Diversion Squad. In this position, my duties include investigating violations of the Connecticut General Statutes and the Controlled Substances Act including, but not limited to, the diversion of controlled substances from legitimate medical channels.

2. As a Special Agent, I have conducted numerous investigations of violations of the law. I have participated in the execution of state and federal arrest and search warrants.

3. I am the DEA case investigator responsible for the ongoing investigation of Sheikh Ahmed, M.D. ("Ahmed"), who a licensed physician in the State of Connecticut. I make this affidavit in support of the Government's Application pursuant to 42 U.S.C. § 290dd-2(b)(2)(C) and 42 C.F.R. § 2.67, for an order authorizing the use of undercover agents and informants to criminal investigate a substance abuse "program," as defined under 42 C.F.R. § 2.11. As set forth below, there is reason to believe that an agent of the program is engaged in criminal misconduct; other ways of obtaining evidence are not available or would not be effective; and the public interest and need for placement of an informant and/or undercover agent in the program outweigh any potential injury to patients of the program, the physician-patient relationship, and

1



the treatment services. I, therefore, believe that good cause exists for the issuance of the requested order.

4. As set forth below, I have reason to believe that Ahmed is engaged in criminal misconduct. I submit this affidavit in support of my application for a court order authorizing the use of undercover agents and confidential informants to criminally investigate the medical practice of Ahmed. Such an order may be necessary because Ahmed's practice or portions of his practice may constitute a "federally assisted alcohol or drug abuse program" under federal privacy regulations.

5. I base this affidavit upon my personal knowledge, upon information and documents provided to me by other investigators assigned to this investigation, and upon information and documents provided by third parties who are or were professionally associated with Ahmed. I have not included each and every fact known to me of the investigation; rather, I have submitted sufficient information to establish good cause for the issuance of the requested court order.

**Ahmed's Registration to Treat Substance Abuse Patients**

6. The Controlled Substance Act provides that a prescription for a controlled substance must be issued for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice.

7. The Controlled Substance Act further provides that all persons who issue prescriptions for controlled substances must be registered with the DEA at any location where controlled substances are stored, dispensed, or administered. If a practitioner does not store, administer, or dispense controlled substances, he is required to be registered at his primary business location where prescriptions for controlled substances are written.

8. Ahmed currently holds a DEA controlled substance registration (#BS4222991), and



2

reports his primary business location as East Hartford Medical Center located at 580 Burnside Avenue, Suite 3, East Hartford, CT 06108. Ahmed also reports practices at Every Day Medical Center located at 621 Hartford Road, New Britain, CT 06053 and Meriden Healthcare located at 834 Broad Street, #1, Meriden, CT 06450. In addition, Ahmed is currently licensed as a physician by the State of Connecticut, Department of Public Health (CT license #033904), and as a Controlled Substance Practitioner by the State of Connecticut, Department of Consumer Protection, Drug Control Division (CSP license #22435).

9. In 2000, Congress passed the Drug Abuse Treatment Act of 2000 ("DATA"), codified at 21 U.S.C. § 823(g). DATA authorizes practitioners who have undergone specialized training and who are properly registered with the DEA to treat up to either 30 or 100 narcotic-addicted patients for their addiction in an office based setting with Schedule III-V controlled substances. These practitioners are sometimes referred to as "DATA-waived" physicians. Currently, the only controlled substance approved by the Food and Drug Administration for dispensing and/or administering to narcotic-addicted patients to treat their addiction in an office-based setting is buprenorphine, a Schedule III controlled substance. Buprenorphine is sold under the brand name Suboxone.

10. According to DEA records, Ahmed first registered as a Data Waived Physician to treat up to thirty (30) patients on June 19, 2015. Currently, Ahmed is authorized under DATA to treat up to one-hundred (100) narcotic-addicted patients. In the last year, Ahmed has treated approximately 10 narcotic-addicted patients.

**The AHMED Investigation**

11. In October, 2017, I received information regarding Ahmed. An open source internet query revealed Ahmed had an active State of Connecticut Physician License with an expiration

3 

date of May 31, 2018. I understand that he has an office in East Hartford, Connecticut, located at 580 Burnside Ave, Suite 3, East Hartford, CT 06108, which goes under the name East Hartford Medical Center. I also understand that Ahmed practices at several other offices under that name including Every Day Medical Center located at 621 Hartford Road, New Britain, CT 06053 and Meriden Healthcare located at 834 Broad Street, #1, Meriden, CT 06450. In addition, I also determined that he had a prior disciplinary case under case number 2002-2002306. In that case, in March 2003, a Consent Order was issued by Connecticut Department of Public Health ("DPH"), in which Ahmed paid a $1,000 civil fine and admitted that an unlicensed medical assistant administered medications to a patient at his medical office. Subsequently, Ahmed entered into a stipulations which provided that in the event Ahmed violated any of the terms of the Consent Order, the Department could seek a summary suspension of his license before the Connecticut Medical Examining Board.

12. My open source internet query also revealed on July 19, 2016, Ahmed was arrested by Inspectors from the Medicaid Fraud Control Unit in the Office of the Chief's State's Attorney and charged with one count each of larceny in the first-degree by defrauding a public community, identity theft in the first degree, health insurance fraud, and forgery in the second degree. According to the arrest warrant affidavit, between 2011 and 2012, Ahmed and his facilities were investigated on multiple occasions for a variety of complaints including unsatisfactory patient treatment, lack of proper authorization to perform certain medical procedures, lack of proper medical recordkeeping and fraudulent Medicaid billing activity. As a result, Ahmed was terminated as an authorized performing provider in the Medicaid program, which immediately revoked his ability to treat Medicaid patients and submit claims for payment. The investigation disclosed that Ahmed continued to bill Medicaid using the identification



information of other professionals associated with his practice who were authorized to submit claims. The investigation also disclosed that Ahmed caused the creation of false entries to make it appear that services billed to Medicaid had been performed, when in fact they had not.

13. A check of law enforcement databases reveals one Connecticut arrest by the States Attorney's Office on July 19, 2016. On that date, Ahmed was charged with larceny by defrauding a public community, health insurance fraud, identity theft, and forgery. That case is pending in the Hartford GA-14, and with the next court date scheduled for November 30, 2017. Ahmed is free on a $25,000 bond.

14. In October, 2017, I spoke with a confidential source ("CS") regarding Ahmed. The CS had been arrested by the Connecticut State Police and initially provided information in return for consideration in his case. His case has since been resolved and he is providing information in return for remuneration. The CS has several felony convictions including for weapon in a motor vehicle, felony possession of hallucinogen/marijuana, illegal sexual contact, and violation of probation.

15. The CS advised me, in substance, that approximately three to six months before the debriefing, an individual who I refer to herein as Subject One, who he/she has known for several years, invited the CS to visit Ahmed at his office located in East Hartford, Connecticut. Subject One told the CS that Ahmed would provide him/her a prescription of "Perc 30's". Based on my training and experience, I know that "Perc 30's" are Percocet or Oxycodone 30 milligram tablets, which are a schedule II controlled substance.

16. The CS stated he/she thereafter visited Ahmed's office located in East Hartford with Subject One. The CS stated he/she entered through a second floor side door which he/she believed to be the staff's entrance. The CS stated he/she and Subject One saw the doctor

5 

together. The CS stated Ahmed had requested the CS bring his/her medical records which were reviewed by Ahmed, but no medical tests or procedures were performed during the visit. The CS witnessed Subject One place cash on Ahmed's desk. Ahmed then asked if the CS was in pain, to which the CS answered affirmatively. The CS stated he/she left the room but Subject One stayed.

17. According to the CS, Subject One advised the CS that it would cost $500 for the prescription which Subject One stated he would pay for on behalf of the CS. Following his/her meeting with Ahmed, the CS went to the front desk where a female, believed to be Ahmed's wife, was sitting. Ahmed had the female sitting behind the counter write out the prescription for Percocet 30 MG for the CS and then Ahmed signed the prescription. The CS and Subject One then left the office. The CS stated he/she was in the office for a total of approximately 10 to 15 minutes.

18. According to the CS, following the visit, the CS and Subject One went to a pharmacy to have the prescription filled. While at CVS, the pharmacist questioned the CS about the prescription, asking the CS why he/she received the same prescription from a different doctor. The CS responded he/she was no longer seeing the prior doctor and was now seeing Ahmed. The CS stated the pharmacist called Ahmed's office to verify the prescription. The CS was advised that Ahmed's office confirmed that the CS was a new patient and that Ahmed had taken the old prescription from the CS and issued the CS a new prescription. The CS stated the pharmacist then filled the prescription for them and the CS and Subject One left with the dispensed medication.

19. Based on my training and experience, a physician accepting only cash payments creates a condition that is susceptible for abuse by the physician and patient alike and is often



associated with the illegal dispensing of prescription. In this connection, based on my training and experience, I know that controlled substances prescribed or distributed to patients often have a "street value" for illegal resale and abuse.

### Good Cause Exits for the Requested Order

20. Based on the foregoing, there is reason to believe, and I in fact believe, that Ahmed's practice may be engaged in criminal misconduct. That criminal misconduct may involve prescribing medications outside the scope of medical practice, prescription fraud, insurance fraud and violations of state and/or federal regulations concerning controlled substances or substance abuse treatment programs. I further believe that Ahmed is involved in the criminal activities to be investigated.

21. Based on my training and experience, and in consultation with state and federal law enforcement officers, I believe that the use of an undercover agent is necessary to conduct an investigation of Ahmed's alleged criminal conduct. Based on my training and experience, I believe that other means of obtaining evidence of this criminal activity are not available or would not be effective. For example, interviews of Ahmed's patients may alert Ahmed to the fact of the investigation. If patients are involved in receiving illegally dispensed medications, their complicity in such conduct makes it very likely they would alert Ahmed to the investigation. Moreover, accurate records of the patients' names would not be available if Ahmed is treating the patients and receiving payment only in cash. In addition, a subpoena for records would also alert Ahmed to the investigation.

22. Based on my training and experience, an investigation involving an undercover agent or confidential informant may require the use of more than one undercover agent. There are occasions when a single particular agent or confidential informant may not be able to obtain an

7

accurate or complete picture of the subject's activity. For example, a particular undercover agent or confidential informant might arouse a subject's suspicion, while a different undercover agent or confidential informant or agent might "introduce" another confidential informant or agent into a subject's business as a sign of trust.

23. Accordingly, the application and the accompanying application seeks authorization to use up to three undercover agents and up to three confidential informants to investigate Ahmed's practice. While it may not be necessary to use multiple undercover agents or confidential informants, I make the request for authorization to use up to three undercover agents and up to three confidential informants in order to conserve investigative and court resources by avoiding multiple applications should such steps prove necessary as the investigation develops.

24. If a confidential informant or undercover agent is used to investigate Ahmed's practice by posing as a patient, while the informant and/or agent is at Ahmed's office, the agent or confidential informant may incidentally observe other patients who are present for treatment, or might incidentally view other information concerning the identities of other patients. Such information would be within the scope of the protections of federal statutes and regulations for patients of substance abuse programs.

25. Nonetheless, in light of the public and private harm caused by the suspected criminal activity, including the risk of harm to the health and safety of patients, any potential injury to the patients of the program, I believe that physician-patient relationships and the treatment services are outweighed by the public interest and need for the placement of an undercover agent in the program.

26. However, if the Court grants the application to authorize placement of a confidential informant or an undercover agent in Ahmed's medical practice, the confidential informant and/or

8 

undercover agent will be instructed to not disclose any patient identifying information obtained from the placement except as necessary to criminally investigate or prosecute employees or agents of the program.

27. The investigation of Ahmed is ongoing. Premature disclosure of the contents of this affidavit, the application for order authorizing an undercover agent, and the order authorizing an undercover, could compromise the safety and security of confidential witnesses and informants, as well as frustrate this investigation by alerting the subjects of an investigation to the nature of the investigation, the techniques employed, and the evidence developed to date, and by limiting any potential use of the grand jury to develop further admissible evidence and by limiting the ability to conduct other search warrants. Accordingly, I request that the application and affidavit, as well as the Court's order be maintained under seal until further order of the Court.

_____
VICTORIA D. EDWARDS
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me at New Haven, Connecticut, this 29th day of November, 2017.

/s/ Judge Joan G. Margolis
_____
JOAN GLAZER MARGOLIS
UNITED STATES MAGISTRATE JUDGE

9